David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiff,
ERIC P.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC P.<br><br>                    Plaintiff,<br><br>v.<br><br>DIRECTORS GUILD OF AMERICA;<br>DGA-PRODUCER HEALTH PLAN;<br>BLUE CROSS OF CALIFORNIA dba<br>ANTHEM BLUE CROSS; and DOES 1<br>through 10,<br><br>                    Defendants. | Case No.<br><br>**PLAINTIFF ERIC P.'S COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS** |

Plaintiff, Eric P. herein sets forth the allegations of this Complaint against Defendants

DIRECTORS GUILD OF AMERICA; DGA-PRODUCER HEALTH PLAN ("the Plan");

BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS; and DOES 1 through 10.

## PRELIMINARY ALLEGATIONS

### JURISDICTION

1.       Plaintiff brings this action for relief pursuant to Section 502 (a) (1) (B) of the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132 (a) (1) (B).

This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502

(e) and (f), 29 U.S.C. Section 1132 (e), (f), and (g) and 28 U.S.C. Section 1331 as it involves a claim made by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

2.       This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan, and enforcing Plaintiff's rights under the terms of an employee benefit plan named as a Defendant.

## PARTIES

3.       Plaintiff is, and at all times relevant was, a resident of California.

4.       At all relevant times, Plaintiff Eric P. was a member of the Directors Guild America ("DGA").

5.       At all relevant times, Eric P. participated in the DGA-Producer Health Plan ("the Plan"), an employee welfare benefit plan within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1), sponsored by Eric P.'s employer, DGA.

6.       Blue Cross of California dba Anthem Blue Cross ("Anthem") is a health insurance provider currently transacting the business of insurance in the State of California, and is the claims administrator of the Plan.

7.       At all relevant times, the Plan was a health insurance plan that offered, *inter alia*, mental health benefits for employees and their beneficiaries, including Plaintiff's family.  This action involves mental health claims denied by the Plan's mental health claim administrator

## FACTS

8.       The Plan guarantees, warrants, and promises coverage for "Medically Necessary" health services, care and treatment, including by not limited to: health care services, mental health care, and treatment at issue herein.

9.       Rileigh P. is Plaintiff Eric P.'s daughter, and was, at all relevant times, a beneficiary of the Plan.

10.      At all relevant times the Plan was in full force and effect.

COMPLAINT                                                                                    CASE NO.

11.     Mental Health claims under the Plan were at all relevant times administered by Anthem UM Services, Inc.

12.     Anthem UM Services, Inc. is a subsidiary of Blue Cross of California dba Anthem Blue Cross.

13.     Anthem UM Services, Inc. uses guidelines referred to as "Anthem UM Guidelines" when administering mental health claims.

14.     No Plan document sets forth the Anthem UM Guidelines.

15.     Instead, under the terms and conditions of the Policy, to qualify for residential treatment relating to psychiatric disorder treatment, the covered individual's symptoms or condition must meet the criteria for Medical Necessity.

16.     Medically Necessary and Medical Necessity services as defined under the Policy are treatment, service, or supplies "consistent with generally accepted medical practice within the medical community for the diagnosis or direct care of symptoms, sickness or injury of the patient; ordered by the attending licensed physician; consistent with professionally recognized standard of care in the medical community with respect to quality, frequency and duration; and the most appropriate and cost-efficient treatment."

17.     California's Mental Health Parity Act, Health & Safety Code §1374.72, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental illnesses at a level equal to the provision of benefits for physical illnesses.

18.     Rileigh P. suffers and has suffered from, and was diagnosed with, *inter alia,* major depressive disorder, unspecified depressive disorder, generalized anxiety disorder, oppositional defiant disorder, disruptive mood dysregulation disorder; unspecified neurodevelopmental disorder; and other specified trauma (including psychological complications due to type 1 diabetes).

19.     Rileigh P. has a long history of mental illness and serious emotional disturbances which, at all times relevant, worsened and became more acute.

COMPLAINT                                                                                                      CASE NO.

20.     From an early age, Rileigh was diagnosed a suffering from with multiple mental health issues.  She began mental health therapy at age 5.

21.     By the age of 8 years old, Rileigh had undergone six different neuropsychological and psychological evaluations.  She was diagnosed with attention deficit hyperactivity disorder, mood disorder, bipolar disorder, generalized anxiety disorder, oppositional defiant disorder, and depression. Her therapists recommended that she attend a structured day treatment program.

22.     Rileigh did attend a structured day treatment program.  However, her mental health issues did not resolve or improve.

23.     At 15 years old, Rileigh was diagnosed with type 1 diabetes. She aggressively resisted treatment for her diabetes, and in the process put her overall health—both mental and physical—at risk.

24.     Rileigh's serious emotional disturbances continued to spiral out of control, resulting in Rileigh's admittance to UCLA's partial hospital day treatment program and intensive outpatient program for 3 months.

25.     The intensive outpatient program was unsuccessful. Rileigh mental health continued to deteriorate, and her medical providers recommended that she receive treatment at a higher level of care, and specifically care at the inpatient level at a residential treatment center.

26.     Based upon the recommendations of her health care providers and therapists, Rileigh was referred and admitted to, and received care at ViewPoint Residential Treatment Center (ViewPoint).  The program at ViewPoint was an 8-week short-term residential care program.

27.     At all times relevant, Rileigh's treatment at ViewPoint was medically necessary, both as that term is defined in the Plan, and in accordance with generally accepted standards of medical practice.  Further, the medical necessity of Rileigh's treatment at ViewPoint was based upon the reasoned medical opinions of her mental health providers.

28.     Rileigh completed her 8-week program, which included individual and family therapy, at ViewPoint.

COMPLAINT                                                                                       CASE NO.

29.     Anthem approved and paid for Rileigh's stay at ViewPoint.  Anthem conceded that Rileigh's mental health problems were sufficiently serious, and the failure of other modalities of treatment was ineffective, thereby making Rileigh's treatment and care at ViewPoint medically necessary.

30.     While at ViewPoint Rileigh displayed ongoing delusional thoughts and acted violently towards peers and staff.

31.     As a result of her persistent mental health issues, Rileigh's treating providers at ViewPoint recommended, as medically necessary, that she attend a well-structed long-term residential treatment center.

32.     At the recommendation of her treating providers, Rileigh was transferred to and attended Uinta Academy (Uinta), an all-girls residential treatment center.

33.     At all times relevant, Rileigh's treatment at Uinta was medically necessary, in accordance with generally accepted standards of medical practice, based upon the reasoned medical opinions of her mental health providers.

34.     Upon admission at Uinta, Rileigh presented with behaviors consistent with unspecified mood disorder, poor management of type 1 diabetes, lack of compliance with medications, including blood sugar testing, problems with motivation, oppositional behavior, executive function, basic cleanliness, mood liability, poor cognition and problem solving, severe anxiety, poor self-esteem, and inability to take personal accountability.

35.     While at Uinta, Rileigh's mental health issues persisted. She received individual and group therapy.

36.     Rileigh ultimately Uinta for 16 months.

37.     Plaintiff filed claims for mental health benefits with Defendants for Rileigh's treatment at UCLA, ViewPoint, and Uinta.

38.     DGA approved all of Rileigh's treatment and care at UCLA and Viewpoint.

39.     Less than 30 days into Rileigh's treatment at Uinta, DGA denied Rileigh's claim.

40.     Eric P., on behalf of his minor daughter, timely appealed DGA's denial.

41.     DGA contracted a third-party reviewer, Medical Review Institute of America, Inc. (MRI) to conduct an "independent medical review."

42.     MRI denied Rileigh's appeal, predicated on the Anthem UM Clinical Guidelines.

43.     Plaintiff again timely appealed these denials.

44.     Again, DGA contracted MRI to conduct an "independent medical review."

45.     DGA and MRI denied Plaintiff's appeal, insisting that "medications can be ordered to be given to Rileigh against her will (such as injectable antipsychotic medications) by parents or by a court order, and in the absence of this, significant improvement is unlikely to take place."

46.     Under the terms of the Plan, Plaintiffs have the ability to submit a third appeal to the DGA Board of Directors for a further review.  On October 1, 2018, Plaintiffs' submitted a third appeal of DGA's denial.

47.     DGA did not furnish a decision within the 60 days as required under the terms of the DGA-Producer Health Plan.

48.     DGA has yet to render a decision on Plaintiffs' appeal.

49.     Despite the mandates of the California and Federal Mental Health Parity Acts, the medical necessity of Rileigh's treatment at Uinta based on her symptoms and diagnoses, and the medical consensus among her treating providers, Defendants DGA and Anthem denied the Plaintiff's appeal

50.     Plaintiff has exhausted all administrative remedies regarding the denial of Rileigh's mental health benefits.

51.     As a result, Plaintiff was forced to pay for Rileigh's care and treatment at Uinta from his own personal funds.

///

///

///

///

COMPLAINT                                                                        CASE NO.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Recovery of Benefits Due Under an ERISA Benefit Plan
(Against All Defendants), Enforcement and Clarification of Rights, Prejudgment and Post
Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section
502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))**

52.     Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

53.     ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiff's rights under the terms of a plan.

54.     At all relevant times, Plaintiff and his daughter Rileigh were insured under the health care plan at issue herein, and Plaintiff's daughter, Rileigh, met the covered health expenses and medical necessity criteria for treatment required under the terms and conditions of the Plan.

55.     By denying Plaintiff's mental health claims, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiff's rights thereunder.

56.     The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

### PRAYER FOR RELIEF

### AS TO ALL DEFENDANTS

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

57.     Declare that Defendants, and/or each of them, violated the terms of the Plan by failing to provide mental health benefits;

58.     Order Defendants, and/or each of them, to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

59.     Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

60.     Provide such other relief as the Court deems equitable and just.

COMPLAINT                                                                              CASE NO.

1    61.    For such other and further relief as the Court deems just and proper.

2

3    Dated: January 22, 2019                    Respectfully submitted,

4                                               **DL LAW GROUP**

5

6                                               By: /s/ David M. Lilienstein
7                                                David M. Lilienstein
                                                 Katie J. Spielman
8                                                Attorneys for Plaintiff Eric P.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**                                                          **CASE NO.**