United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC P., <br> Plaintiff, <br> v. <br> DIRECTORS GUILD OF AMERICA, et al., <br> Defendants. | Case No. 19-cv-00361-WHO <br><br> **ORDER ON STANDARD OF REVIEW** <br> Re: Dkt. No. 37 |

Plaintiff seeks review of the Directors Guild of America-Producer Health Plan's decision denying his claim of coverage for residential mental health treatment for his daughter. The question at issue here is what standard of review – *de novo* or abuse of discretion – applies to my review of the Plan's denial. Plaintiff argues *de novo* review is appropriate, despite the discretion provided to the Trustees of the Plan and through them to the Benefits Committee under the terms of the Plan, because: (1) because the Plan documents granted deference to so many entities involved in the claim-decision process, that grant is "anything but clear and unambiguous," as required in the Ninth Circuit; (2) the Trust documents do not provide deferential decision-making authority over claims to the Benefits Committee that made the final decision for the Trustees; and (3) the second-level appeal denial by the Plan was untimely and, therefore, is not entitled to any deference. Defendants (the Claims Administrator and the Plan) oppose and argue that under the clear provisions of the Plan documents abuse of discretion review is required. I find that the grant to the Benefits Committee is clear and unambiguous and that the delay in decision-making did not cause plaintiff substantive harm. I will utilize the abuse of discretion standard in evaluating this case.[1]

---

[1] This matter is appropriate for resolution on the papers under Civil Local Rule 7-1(b). The November 20, 2019 hearing is VACATED.

**BACKGROUND**

Plaintiff and his dependent daughter were covered under the defendant Directors Guild of America-Producer Health Plan ("Plan"). The operative provisions of the Plan are the Summary Plan Description (SPD, Dkt. No. 37-1) and the Trust Agreement (Trust, Dkt. No. 39-4). As relevant to determining the standard of review, the SPD contains the following provisions:

> The Board of Trustees shall have sole, complete and absolute discretionary authority to, among other things, make any and all findings of facts, constructions, interpretations and decisions relative to the Health Plan, as well as to interpret any provisions of the Health Plan, and to determine among conflicting claimants who is entitled to benefits under the Health Plan. The Board of Trustees shall be the sole judge of the standard of proof in all such cases which means that the Board of Trustees shall have the right to determine the sufficiency of any proof you may provide to support your claim to benefits.[2]

Dkt. 37-1, SPD at p. 86.

> The Claim Administrator has full discretion to deny or grant a claim in whole or part. Such decisions shall be made in accordance with the governing Health Plan documents and, where appropriate, Health Plan provisions will be applied consistently with respect to similarly situated claimants in similar circumstances. The Claim Administrator shall have the discretion to determine which claimants are similarly situated in similar circumstances.
>
> How and when claims are processed depends on the type of claim. All claims under the Health Plan that are required to be submitted to the Health Plan office are post-service health care claims. Most other claims under the Health Plan will also be post-service health care claims.

*Id*.

> If the decision to deny the claim was based in whole or in part on a medical judgment, the Claim Administrator will consult with a health care professional who has experience and training in the relevant field and who was not involved in the initial determination.

*Id*. at 90.

> The operation and administration of the Health Plan is the joint responsibility of the trustees who constitute the Board of Trustees. However, the Board of Trustees may designate in writing persons who are not trustees to carry out fiduciary or non-fiduciary duties as

---

[2] The language is consistent with the Trust (Dkt. No. 39-4 at 3) which provides:
 The Plan Trustees shall have the sole complete and discretionary authority (1) create one or more new plans of eligibilities and/or benefits, (2) grant or deny, in whole or in part, particular claims for benefits filed by participants or beneficiaries, in accordance with the Plan Trustees' interpretation of the Health Plan and their fact findings relative to any such claims for benefits . . . ."

> long as the designation complies with federal law and all applicable provisions of the Trust Agreement.
>
> The Board of Trustees may establish such committees as the Board of Trustees in its discretion deems proper and desirable for the administration of the Health Plan. . . . Such committees may also take final action in specified areas as authorized by a duly adopted resolution of the Board of Trustees. When final action is authorized and taken as specified in Article IV of the Trust Agreement, then such action taken by a committee shall have the same binding effect as an action by the full Board of Trustees. The standing committees of the Board of Trustees are the Administrative Committee, the Benefits Committee, the Finance Committee, and the Legal and Delinquency Committee. . . . All such committees shall have the authority and responsibilities as described in Article IV, Section 9, of the Trust Agreement and as specified by the Board of Trustees by duly adopted resolution.

*Id*. at 106. Finally:

> With respect to post-service claims, as indicated above, if a third party Claim Administrator denies your claim, you must appeal that claim to the third party Claim Administrator. If the third party Claim Administrator denies your appeal, and you have exhausted the Health Plan's claims and appeals procedure, you may request review of a post-service claim by the Benefits Committee of the Board of Trustees.
>
> . . .
>
> The entity reviewing a claim (whether it is a third party Claim Administrator, or the Designated Committee of the Board of Trustees) will have discretion to deny or grant the appeal in whole or part. Decisions shall be made in accordance with the governing Health Plan documents and, where appropriate, Health Plan provisions will be applied consistently with respect to similarly situated claimants in similar circumstances. The entity reviewing a claim (whether it is a third party Claim Administrator or the Designated Committee of the Board of Trustees) shall have discretion to determine which claimants are similarly situated in similar circumstances.
>
> Reviews of denials by the Health Plan office will be heard by the Designated Committee at its next regularly scheduled quarterly meeting. However, if an appeal is received fewer than 30 days before the meeting, the review may be delayed until the next meeting. In addition, if special circumstances require further extension of time, the review may be delayed to the following meeting. Once the benefit determination is made, you will be notified within 5 days after the determination.

*Id*. at 89.

Under the Plan, defendant Blue Cross of California dba Anthem Blue Cross (Anthem) is the Claims Administrator and handles claims and the initial appeal process. SPD at 88-89. The Board of Trustees of the Plan established a Benefits Committee (comprised of Trustees) to decide

3

second-level appeals under the Plan. SPD at 89, 106.

Plaintiff filed a claim with Anthem in October 2017, seeking reimbursement for and coverage of expenses related to his daughter's stay at a residential mental health facility. Dkt. No. 40-2. Plaintiff's claim was denied initially by Anthem, concluding that the treatment was "not medically necessary." Dkt. No. 40-2. Plaintiff appealed that denial to Anthem ("first-level appeal"), and Anthem denied that appeal on January 26, 2018. Dkt. No. 40-3.

Plaintiff then filed a second-level appeal for determination by the Benefits Committee of the Plan. Plaintiff requested that the matter not be heard at the Benefits Committee June 2018 meeting, in order to allow plaintiff's counsel to provide additional information. Dkt. No. 39-6. Around October 1, 2018, plaintiff submitted over 2,000 pages of documents in support of his appeal. The Plan's appeals coordinator sent the information out to a third-party reviewer, the Medical Review Institute of America (MRI), and received a report back from MRI dated October 18, 2018. Dkt. No. 39-8. The appeals coordinator sent plaintiff's counsel a letter on November 5, 2018, which was misaddressed and re-sent on November 20, 2018, advising that MRI confirmed the denial as not medically necessary and stating that the appeal would be reviewed by the Benefits Committee at the "next" meeting in February 2019. Declaration of Daga Olsen (Dkt. No. 39-1) ¶ 3, Dkt. No. 39-2. The appeal was discussed at the February 19, 2019 Benefits Committee meeting and was denied. Dkt. No. 39-11. Plaintiff filed this case on January 22, 2019.

**LEGAL STANDARD**

Under Section 502 of the Employee Retirement Income Security Act ("ERISA"), a beneficiary or plan participant may sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A claim of denial of benefits in an ERISA case "is to be reviewed under a *de novo* standard unless the benefit plan gives the [plan's] administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

When the plan grants the plan administrator discretion to determine eligibility for benefits

4

or to construe the terms of the plan, then a court may only review the administrator's decision regarding benefits for an abuse of discretion. *Id*. A court "can set aside the administrator's discretionary determination only when it is arbitrary and capricious." *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004). In such a situation, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Harlick v. Blue Shield of Cal*., 686 F.3d 699, 706 (9th Cir. 2012).

If the plan does not grant the administrator discretion to determine benefits, then review of the administrator's decision is conducted under the *de novo* standard. *Firestone Tire & Rubber Co*., 489 U.S. at 115. Under the *de novo* standard, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health & Life Ins. Co*., 458 F.3d 955, 963 (9th Cir. 2006). The normal summary judgment standard applies under *de novo* review. *Tremain v. Bell Indus., Inc*., 196 F.3d 970, 978 (9th Cir. 1999).

**DISCUSSION**

**I.      CLEAR AND UNAMBIGUOUS DELEGATION – SPD AND TRUST DOCUMENT**

The question presented is whether terms in the Plan documents – the SPD and Trust document – conferred on the Benefits Committee "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If so, the standard for reviewing the denial of the claim at issue will be abuse of discretion. The grant of discretionary authority must be clear and unambiguous. *Abatie v. Alta Health & Life Ins. Co*., 458 F.3d 955, 963 (9th Cir. 2006). I conclude that the deferential abuse of discretion standard applies to my review of the Plan's denial of plaintiff's appeal.[3]

As noted above, both the Trust document and the SPD confer on the Benefits Committee

---

[3] The parties spend significant time addressing whether discretion was properly vested in Anthem to decide the initial claim and the first-round appeal. However, the only decision under review by me is the Plan's decision. Therefore, whether discretion was given to Anthem is not really at issue, except to the very limited extent that it supports my ultimate conclusion that the Plan documents vested discretion in the Benefits Committee to finally decide claim appeals.

5

the authority to take "final action" which has "the same binding effect as action by the full Board," including hearing and determining claims appeals. Trust at 56-57; SPD 106. While plaintiff also notes that Section 1 (General Powers), subsection S of the Trust gives the Trustees the "sole and complete and discretionary authority" to resolve claims, that the power is "sole" does not undermine the other provisions that allow the Trustees to delegate that very responsibility to the Benefits Committee, made up of a subset of the Trustees. *Compare* Trust at ECF pg. 54 *with* Trust at pgs. 54, 56-57; *see also* SPD 89, 106.

Plaintiff's reliance on *Shane v. Albertson's Inc*., 504 F.3d 1166 (9th Cir. 2007) is misplaced. In that case, while the Plan granted the Trustees the authority "[t]o determine all questions relating to" benefits, because the final decision maker was the "medical review committee" (MRC) and not the Trustees themselves, the question became "whether the MRC properly received and was vested with the Trustees' discretionary authority to review [plaintiff's] LTD claim. If the MRC was not properly vested with such discretion, its decision to terminate [plaintiff's] LTD benefits would not be subject to the deferential standard of review of abuse of discretion." *Id*. at 1170. In determining that question, the Ninth Circuit instructed, "the focus should have been on whether the Disability Plan contemplated the possibility of a transfer of discretionary authority to a third-party and whether there was evidence establishing delegation to the MRC." *Id*. at 1171. Because the "delegation clause" of the plan at issue did not expressly contemplate a transfer of that authority to the MRC (but instead contemplated delegation only to the "Contract Administrator and Employees of the Employer"), there was no clear and unmistakable delegation of authority to the MRC and the review was appropriately *de novo*. *Id*. at 1172.

Here, as noted, the Plan documents themselves expressly contemplate the transfer of the full *discretionary* decision-making authority of the Trustees over claims to the Benefits Committee, and any decision by the Benefits Committee is final and binding as if the Trustees made it themselves. SPD 89 ("the Designated Committee of the Board of Trustees[] will have discretion to deny or grant the appeal in whole or part."); *see also id*. at 106 (allowing Board of Trustees to establish Benefits Committee and authorizing the Committee to "take final action in

6

specified areas" that "shall have the same binding effect as an action by the full Board of Trustees."). The facts are starkly different than in *Shane*. *See also Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1284 (9th Cir. 1990) (sufficient delegation where plan documents allowed Board of Directors to appoint a specific "Long–Term Disability ('LTD') Administration Committee" to determine eligibility for benefits and construe terms of plan).

In Reply, plaintiff points to language from the Trust document confirming that the Trustees have "sole" authority over claims. Trust, Section 1.S. That provision simply confirms that the Plan Trustees have "the sole complete and discretionary authority" to "grant or deny, in whole or in part, particular claims for benefits . . . in accordance with the Plan Trustees' interpretation of the Health Plan. . . ." Dkt. No. 39-4 at 3. It concludes, the "granting or denial of benefits" and "decisions of the Plan Trustees (who shall have complete and discretionary authority to make each of the foregoing) under this Section shall be final and binding on all personas whomsoever." *Id*. That language confirms the Trustees' discretion, which according to both the Trust and SPD documents *was vested* in the Benefits Committee. There is nothing inconsistent, unclear, or ambiguous about the powers of the Trustees, the creation and duties of the Benefits Committee, or the discretion granted to the Benefits Committee to make final claim decisions on behalf of the Board of Trustees.

## II. TIMELINESS OF DECISION

Plaintiff also argues that his appeal should have been decided at the November 7, 2018 Benefits Committee meeting, and that by waiting until the February 2019 meeting, the Plan violated its own internal timeframe that required it to review the decision at the Benefits Committee's November 2018 meeting.[4] Plaintiff also argues that the failure to proceed on November 7, 2018 violated ERISA's regulations, which also require the appeal to be determined

---

[4] Plan at 89 ("Reviews of denials by the Health Plan office will be heard by the Designated Committee at its next regularly scheduled quarterly meeting. However, if an appeal is received fewer than 30 days before the meeting, the review may be delayed until the next meeting. In addition, if special circumstances require further extension of time, the review may be delayed to the following meeting.").

7

at the next quarterly meeting, unless the claimant is notified of special circumstances warranting a further delay prior to the commencement of the extension.[5]

Plaintiff points out that the Plan did not notify him of any "special circumstances" and did not provide effective notice until after commencement of the extension because no correspondence was sent to him until November 5, 2018, and that correspondence was misaddressed. Given these facts, plaintiff argues that I should consider the appeal "deemed denied" and apply a *de novo* standard of review.

The Ninth Circuit in *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protec. Plan*, 349 F.3d 1098 (9th Cir. 2003) addressed the situation where a claimant's appeal had not been determined within the time frames required by the plan and ERISA. The plan language at issue provided that if the administrator had not decided the appeal within a time certain, the appeal was "deemed denied." Given that language, the court held that "where, according to plan and regulatory language, a claim is 'deemed ... denied' on review after the expiration of a given time period, there is no opportunity for the exercise of discretion and the denial is usually to be reviewed *de novo*. While deference may be due to a plan administrator that is engaged in a good faith attempt to comply with its deadlines when they lapse, this is not such a case." *Id*. at 1103. Plaintiff argues the same result should follow here in light of the Benefit Committee's failure to timely consider his appeal.

However, the import of *Jebian* was clarified by the Ninth Circuit in *Gatti v. Reliance Stand. Life Ins. Co.,* 415 F.3d 9785 (9th Cir. 2005) and does not require *de novo* review under the facts of this case. In *Gatti,* the Ninth Circuit limited the impact of *Jebian* and held that "procedural violations of ERISA do not alter the standard of review unless those violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby

---

[5] 29 C.F.R. § 2560.503-1(i)(2)(iii)(B) ("If special circumstances (such as the need to hold a hearing, if the plan's procedures provide for a hearing) require a further extension of time for processing, a benefit determination shall be rendered not later than the third meeting of the committee or board following the plan's receipt of the request for review. If such an extension of time for review is required because of special circumstances, the plan administrator shall notify the claimant in writing of the extension, describing the special circumstances and the date as of which the benefit determination will be made, prior to the commencement of the extension.").

8

causing the beneficiary substantive harm." *Id*. at 985.[6] That result was required because it would be inconsistent with the statutory structure and Ninth Circuit case law "to alter the standard of review on the basis of technical violations of ERISA's requirements." *Id*. (discussing and relying on *Blau v. Del Monte Corp*., 748 F.2d 1348 (9th Cir.1984)); *see also P. Shores Hosp. v. United Behavioral Health*, 764 F.3d 1030, 1040 (9th Cir. 2014) ("most procedural errors are not sufficiently severe to transform the abuse-of-discretion standard into a *de novo* standard.").

Here, as defendants point out, the only alleged violations of the Plan terms or ERISA's requirements are the hearing of the appeal in February 2019 (as opposed to November 2018) and, relatedly, the Plan's failure to identify the special circumstances requiring the continuance and *effectively* notify plaintiff of the continuance prior to the November 7, 2018 Benefits Committee meeting. While there may have been a technical violation of ERISA procedural requirements, plaintiff does not identify how he was *harmed* from the lack of prior notice of the extension (due to the misaddressing of the November 5, 2018 letter) or the failure to identify special circumstances in writing. That failure means plaintiff's request for *de novo* review is not warranted.

The mere fact that there was delay does not mean the Plan was not acting in good faith. On September 12, 2018, the Plan provided plaintiff information about the claim and the appeals process and notified plaintiff's counsel that the next quarterly Benefits Committee meeting was scheduled for November 7, 2018. Dkt. No. 37-1 at ECF 147. Plaintiff then filed his "final appeal" along with over 2000 pages of supporting documents on October 1, 2018. Dkt. No. 37-1 at ECF 153. The Plan promptly sent those documents out for review to third-party MRI. Even though the Plan had the MRI report in mid-October (in advance of the November 7, 2018 meeting), the record shows that there were additional steps that needed to be taken. That included reviewing the MRI report, summarizing all of the records for the Benefits Committee and, presumably, getting the input from the Chief Medical Advisor. Dkt. No. 39-10; *see also* 37-1 at ECF 150. The

---

[6] The panel noted that the purpose of the "deemed denial" holding in *Jebian* meant only that plaintiff "could have brought her lawsuit after the time limits [for the appeal] expired," so that she could move her claim forward despite the plan's failure to act on her appeal within their set timeframe. *Gatti*, 415 F.3d at 984.

9

continuation of the matter to the February 2019 meeting was supported by special circumstances. In addition, the Plan attempted to notify plaintiff's counsel that the matter would be heard in February 2019 on November 5, 2018, which was prior to the previously noted November 7, 2018 meeting (although that letter was apparently misaddressed letter and so was faxed to plaintiff's counsel on November 20, 2018).

Finally, it is significant that in the Plan's November 5, 2018 letter plaintiff's counsel was notified of the result of MRI's report and given a copy of the report. The Plan informed plaintiff's counsel that "any additional information," including a response to the MRI report, was due 30 days before the February 2019 meeting. The Plan gave plaintiff *more* process, namely the opportunity to respond to the MRI report before having the appeal finally determined.

Assuming that the Plan did not comply with its own notice and ERISA's timing requirements, that violation was only technical and does not constitute a violation "so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm." *Gatti*, 415 F.3d at 985. There is no evidence that the Plan took egregious steps or otherwise acted in bad faith, or that plaintiff suffered any harm that would merit stripping the Plan's February 2019 determination of an abuse of discretion review. *See, e.g., Gorbacheva v. Abbott Laboratories Extended Disability Plan*, 309 F. Supp. 3d 756, 767 (N.D. Cal. 2018) ("Here, regardless of the parties' respective computations of the timeliness of the Plan Administrator's decision, Plaintiff has not identified any substantive harm resulting from Defendant's purportedly untimely decision that would justify deviating from the abuse of discretion standard of review."); *Otto v. Employee Ret. Income Plan - Hourly W*., 2015 WL 12516690, at *16 (C.D. Cal. Mar. 13, 2015), *aff'd sub nom. Otto v. Employee Ret. Income Plan*, 667 Fed. Appx. 660 (9th Cir. 2016) (unpublished) ("Defendant's unexplained five-month delay in responding was a procedural violation, but it was not so egregious as to warrant the application of de novo review."); *Barnes v. AT & T Pension Ben. Plan--Nonbargaines Program*, C-08-4058 EMC, 2012 WL 1657054, at *11 (N.D. Cal. May 10, 2012), *aff'd sub nom. Barnes v. AT & T Pension Ben. Plan--Nonbargained Program*, 622 Fed. Appx. 669 (9th Cir. 2015) (unpublished) ("Defendant Plan was late in deciding the initial claim by about 90 days and the appeal by about

40 days. It is hard to see how this kind of delay caused Mr. Barnes any substantive harm.").

## CONCLUSION

For the foregoing reasons, the abuse of discretion standard will apply to my review of the Plan's denial of the claim.

**IT IS SO ORDERED.**

Dated: November 19, 2019



William H. Orrick
United States District Judge